RUSSELLVILLE BANK & TRUST CO. v. McGHEE et al.

Eastern Section.   March, 1932.

Petition for Certiorari denied by Supreme Court, June, 1932.

462

McMahan & Pierce, of Morristown, for complainants.
John R. King, of Morristown, for defendants.

SNODGRASS, J.   The chancellor's opinion disposing of the case and of the petition to rehear sufficiently states the case.   The decree, after reciting the record upon which the cause was heard on September 30, 1930, sets forth that the cause was taken under advisement and that thereafter on October 31, 1930, having reached a conclusion on the matter, the court filed with the clerk and master his written findings of facts and his conclusions thereon and embodied the same in his decree as follows:

"The original bill was filed for the purpose of collecting certain notes made and signed by the defendant J. L. McGhee payable to complainant bank; other notes on which Defendant McGhee was endorser, one in which he was co-maker, also for an overdraft of $179.91 alleged to be due said bank.

"The bill further alleges a state of facts that defendant J. L. McGhee was fraudulently disposing of his property or was about

to fraudulently dispose of his property for the purpose of hindering and delaying Complainant in the collection of its just debts. Fiat for an attachment was granted and attachment issued and was levied upon certain real property mentioned and described in the original bill belonging to the defendant.

"Upon said bill being filed Defendant J. L. McGhee interposed his pleas in abatement. Complainant filed motion to set said pleas down for argument. This order by agreement was afterwards withdrawn, and defendant, J. L. McGhee filed an answer and cross-bill preserving the questions of the plea in abatement in his answer.

"The Complainant later amended the original bill relative to the allegations of the attachment and brought in new parties; however the new parties under pleadings did not affect the issues presented under the pleadings because pro confesso has been entered against all new parties under Complainants' amended bill.

"The plea in abatement as set up in the answer denies that Dft. had fraudulently disposed of his property or was about to fraudulently dispose of it. The plea in abatement to some of the notes was on the theory that the suit was premature.

"The defendant filed his cross-bill in which he asks for certain affirmative relief. So that the cause, as it now stands under pleadings and proof present the following questions:

"1. Should the Plea in Abatement interposed by the Defendant to the attachment issued and levied upon the real property described in the bill be sustained?

"2. Is the Complainant and Cross Defendant under the record in this cause entitled to a decree against defendant J. L. McGhee on all the notes sued on and also the overdraft sued on?

"3. Is Cross Complainant and defendant J. L. McGhee entitled to a decree against Complainant for the amount of his account sued on under the cross-bill?

"4. Is Cross Complainant entitled to a decree against the Complainant for interest charged over and above 6% per annum and interest on each usurious item from the date of payment?

"II. The first question for consideration, is that presented by the Plea in Abatement relied on in the answer of the defendant as to the attachment. The grounds of the attachment set out in the original bill was, that the defendant was fraudulently disposing of his property or was about to fraudulently dispose of his property, so as to hinder and delay Complainant in the collection of its debt. The record of this cause and on this point by a large preponderance of the evidence shows, first, that the defendant sold his bank stock, but that it was sold for all it was worth and the proceeds applied on the just and bona-fide debts of the defendant J. L. McGhee. Another contention of Complainant was, that the defendant McGhee placed a mortgage on certain of his real property. The record

discloses that he owed the party to whom he mortgaged the property a just and bona-fide claim. The debt was more than the value of the property. The Complainant further says, that one Miss Ruth Sykes was about to commence a breach of promise suit against the defendant. But this would not be sufficient grounds upon which to grant an attachment. So that the Court is of the opinion that a preponderance of the evidence is against the Complainant and favorable to the plea in abatement. The defendant relies on this plea in his answer, and it will be sustained.

"III. The next question for consideration is, under the record in this cause, is Complainant entitled to decree against Cross Complainant and Defendant J. L. McGhee on all notes sued on together with an overdraft in the sum of $179.91.

"The record discloses that on the 15th day of May, 1929, the complainant Russellville Bank & Trust Co. filed its original bill in this cause, and on July 1, 1929, defendant J. L. McGhee filed his Plea in Abatement to certain notes which were sued on, upon the theory that the suit in so far as certain notes were concerned which will be hereafter set out were not due. Now it will be observed that the notes sued on are in words and figures, to-wit, in so far as the question at issue in this suit.

"1st. A note for $4350 bearing date of December 31, 1928, payable on demand to the Russellville Bank & Trust Co., signed by J. L. McGhee and providing for 10% Attorneys' fees.

"2nd. A note of $287 dated Dec. 31, 1928, payable on demand to the order of the Russellville Bank & Trust Co., made and signed by J. L. McGhee, and providing for 10% Attorneys' fees.

"3rd. A note for $150 dated February 17, 1929, due ninety days after date payable to the Russellville Bank & Trust Company, being a joint note made and signed by Otto Wall and J. L. McGhee, and providing for 10% Attorneys' fees.

"4th. A note for $50 dated April 18, 1929, due thirty days after date, payable to the order of the Russellville Bank & Trust Company, signed by J. L. McGhee and providing for 10% Attorneys' fees.

"5th. A note for $30 dated April 1, 1929, due ninety days after date, payable to the order of J. L. McGhee, made and signed by Ruth Sykes and by J. L. McGhee assigned to the Russellville Bank & Trust Company, and providing for 10% Attorneys' fees.

"6th. A note in the sum of $45 dated Feb. 11, 1929, due ninety days after date, payable to the order of J. L. McGhee, made and signed by Fate Gibson and by said J. L. McGhee assigned to the Russellville Bank & Trust Co. and providing for 10% Attorneys' fees.

"7th. A note for $1000 bearing date of August 5, 1925, due ninety days after date, payable to the order of J. L. McGhee, Hal P. Read,

and Will Read, made and signed by C. B. Eden, which note was assigned to the Russellville Bank & Trust Co. by J. L. McGhee, Hal P. Read and Will Read and providing for 10% Attorneys' fees.

"In the Plea in Abatement relied on in defendant's answer two grounds for the abatement are alleged in said plea as to the note dated Dec. 31, 1928 for $4350, and the note dated Dec. 31, 1928 for $287. The grounds are that by the terms of said notes Complainant impliedly contracted with the defendant to demand payment for said notes at some time in order to mature them. That until payment was actually demanded and payment refused there was no breach of the contract on the part of defendant J. L. McGhee, and same was not actionable until there was a breach. It was alleged in the answer that no demand had been made, and since there was no demand this suit was premature. The Court cannot agree with this contention. The record in this cause discloses that demand had been made, in that, at different times the defendant J. L. McGhee had been notified that he must reduce his loans, by a member of the finance committee. This he did not do. As a matter of fact the defendant J. L. McGhee was a member of the Finance Committee of Complainant Bank and a Director up until a short time before this suit was brought. He knew full well the condition of his notes at the Bank, and he further knew that he was largely indebted to the Bank and owed said Bank more than he did any other one creditor, but the record discloses that he had really been told he would have to reduce his loan. But if this were not true, the bringing of a suit is equivalent to an actual demand. So that under the record and the facts in this cause, the defendant and cross complainant cannot successfully rely on the implied contract to defeat the recovery of the complainant. This being true, the complainant is entitled under the original bill to a decree against the defendant J. L. McGhee on the $4350 note and $287 note, with interest from the date of the filing of the bill, and in addition 10% Attorney fees on the principal of said notes.

"The third note sued on and mentioned above is one for $150 dated February 15, 1929, due ninety days after date signed by Otto Wall and J. L. McGhee. Suit on this note was filed before maturity and plea in abatement was set up in the answer in so far as the defendant J. L. McGhee is concerned, but as to Otto Wall, he had made no defense. A pro confesso has been entered against him. The Court is of the opinion that the plea in abatement as to J. L. McGhee on the ground that the suit was premature is well taken, but since Otto Wall was brought into court after the maturity of said note and permitted a pro confesso to be entered against him, complainant bank is entitled to a decree against the said Otto Wall for the full amount of said note together with interest from maturity and 10% Attorneys' fees.

466

"The fourth note for consideration is a note for $50 dated April 18, 1929, payable to the Russellville Bank & Trust Co. due thirty days after date, signed by J. L. McGhee. The court is of the opinion that the plea in abatement set up in the answer to this note is sustained.

"The fifth note sued on for consideration is a note for $30 dated April 1, 1929, due ninety days after date signed by Ruth Sykes and endorsed by J. L. McGhee. The Plea in Abatement to this note in so far as the defendant J. L. McGhee is concerned is well taken; however the .defendant Ruth Sykes was made a party to this suit by amendment and sued for the full amount of this note under the amended bill. She makes no defense and lets pro confesso be entered against her. So that the Complainant is entitled to a judgment against Ruth Sykes for the principal and interest accrued after maturity together with 10% Attorney Fees.

"The sixth note is one for $45 dated February 11, 1929, due ninety days after date, payable to J. L. McGhee, made and signed by Fate Gibson and assigned by J. L. McGhee to Complainant Bank & Trust Co. This note was past due at the time suit was filed. The Complainant is entitled to a decree for the principal sum of $45 together with interest and Attorneys Fees against J. L. McGhee and Fate Gibson. The Court is further of the opinion that in the event defendant J. L. McGhee is required to pay said note together with interest and attorney fees, that the defendant and cross complainant J. L. McGhee should be subrogated to the rights of Complainant Bank.

"The seventh note sued on, is a note for $1000 dated August 5, 1925, due ninety days after date, made and signed by C. B. Eden and payable to J. L. McGhee, Hal P. Read and Will Read, and by them assigned to Complainant Russellville Bank & Trust Co. Now it appears that C. B. Eden is dead and Hal P. Read qualified as administrator of his estate, and that the personal estate of C. B. Eden is insolvent. The court is of opinion that J. L. McGhee, Hal P. Read, Will Read and Hal P. Read as Admr. of the estate of C. B. Eden are jointly and severally liable to Complainant Bank for the principal, interest and Attorney fees less the credits indicated on the back of said note. In the event that the defendant J. L. McGhee is made to pay said decree or more than his equitable share, he may be subrogated to the rights of complainant under and by virtue of the prayer of his cross-bill.

"The proof further shows that on the date of the filing of this bill, that the Cross Complainant was due the complainant bank an overdraft in the sum of $179.91. Complainant is entitled to a decree in the amount of this overdraft with interest from the date of the filing of the original bill.

"IV. Is the defendant and cross complainant J. L. McGhee en-

titled to a decree against complainant bank for the amount of his account sued on under the cross-bill?

"The court finds from the record in this cause, that the defendant and cross complainant J. L. McGhee had been a director and on the finance committee of complainant bank for many years. That for such services as were rendered by defendant J. L. McGhee, as a director, was never considered by the directors or members of the finance committee as services that were to be paid for by the bank. They were considered by the directors and finance committee as gratuitous work, unless specifically understood by the directors or understood by the finance committee that such services were to be paid for by the bank. This is evidently true as to the accounts of J. L. McGhee; being the same that he has sued on in this cause, with the exception of the $100 which the record discloses that Mr. McGhee has already been given credit for. These accounts go back over a period of several years, and the court finds in looking over his bank account that a great portion of this time he was overdrawn and all the time he was indebted to the bank. That he never presented a claim for any of these accounts yet he was a director and a member of the finance committee. He never even called them to the attention of the directors of the bank or to the attention of the members of the finance committee. There was no record of the bank or order made by the directors authorizing the defendant to do the work that he did do nor was there any order directing anyone else to employ the defendant McGhee to do the work that he did do or to pay him for the services that he has done. Neither has defendant McGhee requested the payment of the same until after the filing of the bill in this cause. This being true the court is of the opinion that each and every item of the account except the $100 was an afterthought on the part of the defendant and cross complainant in this cause and that he is not entitled to recover under his cross-bill for this amount.

"V. Is the cross complainant and defendant J. L. McGhee entitled to decree against complainant bank for usury? Under the record in this cause the cross complainant and defendant McGhee began borrowing money from the complainant from the time of the organization of said bank. That his indebtedness has grown from time to time. That the payments that have been made, and the interest paid could hardly be ascertained from the record. The record discloses that the cross complainant and defendant has paid the complainant more than 6% on some notes somewhere, sometime and some he had not. Any way the defendant was a director in the bank at the time that the order was made for the purpose of charging 8% interest on money loaned by complainant bank. The record further discloses that for some time the defendant has paid very little and to say the least of it, he has not paid the notes

upon which he now claims that he has paid usury. At least the complainant does not allege any definite amount of usury and does not prove any definite amount of usury. So that under the allegations and facts in this record, the court is of the opinion that the cross complainant and defendant is not entitled to a decree for usury under his cross-bill.

"The cost of this cause will be adjudged, one-fifth to the complainant and cross defendant, Russellville Bank & Trust Company. The remainder will be paid by the defendant to the original bill, as amended.

"The various exceptions made by both complainant and defendant are overruled, they not being of sufficient merit to prohibit the court from reaching a proper decree in this cause.

"In the event an appeal is prayed by either or both parties the same will be granted and thirty days will be allowed from the entry of the decree in which to perfect the same.

"Let decree be prepared in accordance with this opinion.

"This October 31, 1931.

"Ben Robertson, Chancellor."

Thereafter and before the entry of final decree, the petition to rehear was filed resulting in an opinion modifying the former; the same being as follows:

"This cause is before the court on Petition of Defendant to Rehear, and answer of Complainant to said Petition.

"I. The first ground which Defendant and Cross Complainant sets up to sustain his petition to rehear arises under his Plea in Abatement; in effect, that notwithstanding said notes are payable on demand, complainant was not entitled to make such demand until six months after date of said notes because of an understanding between complainant and defendant for several years, that his notes payable on demand were to run six months.

"This contention under the record is not well taken and the same is denied.

"II. That the court should have allowed a recovery for services rendered and expenses paid and sued for under defendant's cross-bill:

"(a) As to services rendered by defendant and cross complainant, the court is of the opinion that the defendant never intended to charge for his services and he rendered them as a director and as a member of the finance committee voluntarily, as was customary with some of the directors and members of the finance committee, so that this contention is not well taken and denied.

"(b) As to expenses charged in making certain trips Counsel for Complainant has called the Court's attention to the answer of cross defendant to the cross-bill, which tacitly admits the Liability

(which was overlooked by the court in its former memo opinion). By virtue of the proof on this subject and the answer, the court is pleased to modify its former opinion and holds that under the record cross complainant is entitled to recover for all reasonable expenses on trips shown to be made for cross defendant for the use of his automobile, gas and oil, food, etc.

"III. That the court erred in denying cross complainant to recover usury on various loans made by cross defendant bank to cross complainant. The court after further considering this question is of the opinion that it committed error in its former opinion. That it failed to apply the right principle of law under the facts, and that the insistence of cross-complainant is correct, and its former opinion will be modified so that cross complainant may recover from the defendant such usury as he has paid; the same to be applied to the decree rendered in favor of complainant in its original bill against the defendant J. L. McGhee.

"IV. The court sees no reason to change its views relative to the adjudication of costs.

"On the hearing of this cause motion was made by defendant to the original bill to the effect that in the event the attachment was dismissed that the clerk and master hear proof and report the amount of damages which defendant suffered by reason of complainant wrongfully suing out and levying attachment on his property. The court overlooked this matter in its former opinion, and is of the opinion that the proper practice in such cases is to refer the matter to the Master to report the amount of damages defendant is entitled to, and this course will be taken in this cause."

"VI. The memo opinion heretofore filed will be further modified so as not to dismiss cross complainant's cross-bill.

"VII. It results therefore that complainant's petition to rehear is allowed, and the court's former memo opinion will be modified as indicated above. A reference to the master will be made:

"(a) To ascertain what would be the reasonable worth for the use of cross complainant's automobile and for the money expended for gas, oil, food, etc.

"(b) What amount of interest the cross defendant has collected from cross complainant over and above the legal rate of interest?

"(c) What amount of damages defendant and cross complainant suffered by reason of the attachment issued and levied upon his property by the complainant and cross defendant?

"The Master in order to properly execute the reference in this cause on the three grounds above stated may consider the proof on file and he may hear such further proof as he deems advisable to properly execute said reference.

"Let decree be prepared in accordance with the court's former memo opinion except as modified by this opinion."

Continuing, the decree winds up as follows:

"It is therefore, ordered, adjudged and decreed by the Court, in conformity with the Court's original and supplemental opinion, both of which are by consent herein copied and made a part of this decree, that the plea in abatement interposed by defendant McGhee to the attachment sued out and levied by complainant on his real estate, be and the same is hereby in all things sustained, and said attachment is hereby discharged.

"It is further ordered, adjudged and decreed that defendant McGhee's plea in abatement to this suit on the following described notes based on the ground that said action was premature, it having been begun before said notes matured, is well taken, and complainant's suit on said notes as against defendant McGhee is hereby dismissed, which notes are as follows:—Note dated February 17, 1929, for $150, due 90 days after date, signed by defendant Otto Wall and defendant J. L. McGhee; note dated April 1, 1929, for $30 due 90 days after date, signed by defendant Ruth Sikes and endorsed by defendant McGhee; note dated April 18, 1929, for $50 due 30 days after date, signed by defendant McGhee.

"It is further ordered, adjudged and decreed by the Court that defendant McGhee's plea in abatement alleging prematurity of suit as to two of the notes sued on, to-wit: note dated December 31, 1928, for $4350 due on demand; and note dated December 31, 1928, for $287 due on demand, for the reasons, (1) that no demand for payment of said two notes had been made previous to the bringing of this suit and that said notes were not actionable until payment had been demanded and refused; (2) that there was an independent, collateral contract or agreement between complainant and said McGhee that demand for payment of said notes would not be made till six months after their date, in consequence of which said notes were not actionable till six months after their date, is not well taken and the same is hereby disallowed and overruled. To the action of the court in overruling and disallowing his said plea in abatement to complainant's suit on said two notes, Dft. McGhee excepted.

"It is therefore ordered, adjudged and decreed that complainant have and recover of defendant J. L. McGhee as follows:

"(1) On defendant's promissory note executed to complainant on December 31, 1928, due on demand, in the principal sum of $4,350, and interest from May 15, 1929, the date of the filing of complainant's original bill, in the sum of $478.50, and attorneys fees in the sum of $435, total, $5,204.77.

"(2) On defendant's promissory note executed to complainant on December 31, 1928, due on demand, in the Principal sum of $287

and interest from May 15, 1929, in the sum of $31.57, and attorneys fees in the sum of $28.70, total, $347.27.

"(3) On defendant's overdraft of complainant's bank in the sum of $179.91, with interest from May 15, 1929, $17.36, total, $197.27.

"(4) And it is further ordered, adjudged and decreed that complainant, Russellville Bank & Trust Company, have and recover of the defendant J. L. McGhee and cross defendant, Fate Gibson, on the promissory note executed by said Gibson to said McGhee on February 11, 1929, and transferred by McGhee to complainant's bank, in the principal sum of $45, with interest from May 11, 1929, to-wit: $4.50 and attorneys fees $4.50, total $54, but it is ordered, adjudged and decreed, with respect to this item, that if the defendant, J. L. McGhee is caused to pay this decree that said McGhee shall be subrogated to the rights of complainant in same against said Fate Gibson.

"(5) It appears that on August 5, 1925, C. B. Eden executed his note to complainant for $1000 endorsed by Hal P. Read and brother being Hal P. Read and the defendant Will Read, and by the defendant J. L. McGhee. Said Eden died shortly after giving said note and said Hal P. Read was appointed as administrator on his estate by the County Court of Hamblen County, qualified as such and has since been administering said estate. He had, with the consent of the other endorsers, been paying the interest on said note and complainant has been extending the time of payment on same till such time as he could get the affairs of said estate in shape to pay same, the interest being last paid to April 5, 1929. In its original bill in this cause none of the parties to said note were sued except defendant J. L. McGhee. On October 16, 1929, defendant McGhee filed his answer and cross-bill in which said Hal P. Read and Will Read, endorsers on said note and Hal P. Read, as administrator on said Eden estate, were made parties defendant thereto, in which it was alleged that said Eden's estate was solvent; that no suggestion of its insolvency had been made to the County Court by said Hal P. Read, administrator; that he (McGhee) was entitled to have said note paid by said Read, administrator, out of the assets of same in his hands, or by said Read and the sureties on his administration bond if no assets of said estate existed sufficient to pay same for the reason that after four years from the death of said Eden no suggestion of insolvency of his estate has been made; that even if said estate should be actually insolvent, in no event, should said McGhee be required to pay any more than one-third of the remainder of said note after crediting same with its pro rata distribution from said estate, and that in case he was required to pay said note, that he was entitled to be subrogated to the rights of complainants in same against said Hal P. Read as administrator

and against said Hal P. Read and Will Read as endorsers on said note. Said cross-bill prayed for appropriate relief.

"On October 31, 1929, complainant filed an amended bill, to which said Hal P. Read as administrator aforesaid, and Hal P. Read and Will Read as endorsers on said note were made parties. It was alleged in said amended bill that said Hal P. Read, administrator as aforesaid, had assets in his hands belonging to said estate which should be subjected to the payment of said note, and called upon him to disclose in his answer, under oath, what assets of said estate he had in his hands. Said Read refused to answer either said cross-bill or said amended bill and accordingly judgments pro confesso were subsequently taken and entered against him, both under said cross-bill and under said amended bill.

"The court found in its written findings of fact that the estate of said C. B. Eden is insolvent, to which finding defendant McGhee excepted on the ground (1) that there is no proof that said estate is insolvent, and the presumption is that it is solvent; (2) because there is an allegation of solvency of said estate contained in his cross-bill, which allegation is confessed by said Read, Administrator, which is conclusive.

"It is therefore further ordered, adjudged and decreed by the court in accordance with its findings and opinion that complainant Russellville Bank & Trust Company have and recover of Hal P. Read, administrator on the estate of said Eden, and J. L. McGhee, Will Read and Hal P. Read, endorsers on said note the principal sum of $1000 with interest from April 5, 1929, $103.33, and attorneys fees, $100, total amount $1203.33. But it is ordered, adjudged and decreed that in the event the defendant J. L. McGhee, pays this judgment or any part of same, that he be subrogated to the rights of complainant in said judgment against the other parties respectively as prayed for in his cross-bill.

"(6) That complainant have and recover of cross defendant Otto Wall, on the note executed to complainant by said Wall and J. L. McGhee, on February 17, 1929, in the sum of $150, with interest from date of demand, May 15, 1929, $14.40, and attorneys fees, $15, total amount $179.40.

"(7) That complainant have and recover of cross defendant Ruth Sikes, on the note executed by her and J. L. McGhee on April 1, 1929, due 90 days after date, in the principal sum of $30, with interest after maturity, $2.66, and attorneys fees $3, total amount $35.66.

"(8) That defendant have and recover of complainant one-fifth of all of the costs of this cause; and that complainants have and recover of the defendant McGhee, Sikes, Wall, Gibson, Hal P. Read, administrator on the estate of C. B. Eden, and Hal P. Read and Will

Read, jointly, the remaining four-fifths of all said costs. To the action of the court in adjudging him to pay any costs the defendant McGhee excepted.

"(9) Upon the several recoveries hereinabove allowed, including the recoveries for costs, executions are awarded respectively, but no execution will issue against defendant McGhee on the recovery allowed against him on said $4350 note and said $287 note until after the coming in of the report of the Clerk and Master on the reference hereinafter decreed, for the reason that whatever recoveries may be allowed said McGhee upon the matter therein referred, will be entitled to be set off against or credited upon complainant's recoveries herein decreed to it in said notes.

"It is further ordered and decreed that this cause be and is hereby referred to the Clerk and Master to ascertain and report on the following matters:

"(1) The amount of expense incurred by defendant McGhee on the several trips made by him on business for complainant including the use of his automobile, gas, oil, money expended for food, etc.

"(2) The amounts of money paid by defendant McGhee to complainant within the six years immediately preceding the filing of his cross-bill in this cause, as interest on each of the several loans made to him by complainant, in excess of the rate of six per cent per annum thereon, together with the date of each payment.

"(3) The amount of damages sustained by defendant McGhee by virtue of the wrongful suing out and levying of the attachment of his real estate in this cause.

"In executing said order or reference the Clerk and Master will consider all of the proof now on file in this cause and such additional proof as may be taken and offered by the parties and will report to the next regular term of the Court. Until the coming in of said report all other questions are reserved.

"And to the action of the Court in sustaining the defendant McGhee's plea in abatement to the attachment sued out in this cause and dismissing said attachment; and to the action of the Court in sustaining the defendant McGhee's plea in abatement on the following described notes and dismissing complainant's suit on said notes as against the defendant J. L. McGhee; one note being dated February 17, 1929, for $150, due ninety days after date, and signed by the defendant J. L. McGhee and Otto Wall; one note dated April 1, 1929 for $30 due 90 days after date, and signed by the defendant Ruth Sikes and endorsed by the defendant J. L. McGhee; one note dated April 18, 1929, for $50 due 30 days after date signed by defendant J. L. McGhee; and to the action of the court in allowing and decreeing to defendants a recovery of one-fifth (1/5) of the court costs; and to the action of the Court in

allowing and giving a recovery to the defendant J. L. McGhee an expense account on the several trips made by him for the complainant on business and in referring same to the Clerk and Master to hear proof and ascertain; and to the action of the Court in allowing and decreeing a recovery to the defendant J. L. McGhee for the amount of money or usury paid by defendant J. L. McGhee to complainant within six years next preceding the filing of the cross-bill by said McGhee on loans made by complainant to defendant McGhee, and referring said matter to the Clerk and Master to hear proof and ascertain and report the amount of same. And to the action of the Court in allowing and decreeing a recovery in favor of the defendant McGhee for damages the defendant McGhee might have sustained by reason of the wrongful suing out and levying the attachment in this cause and referring said matters to the Clerk and Master to hear proof and ascertain; and to the action of the Court in sustaining cross complainant's Cross bill and in not dismissing same, and to the action of the Court in all of the foregoing particulars, the complainant, the Russellville Bank & Trust Company, excepts in law and equity, and prays an appeal to the next term of the Court of Appeals sitting at Knoxville, Tennessee, which appeal the Court is pleased to and doth grant upon complainant filing with the Clerk and Master within thirty days from the entry of this decree an appeal bond conditional as required·by law.

"On the hearing defendant and cross complainant McGhee objected to all of the testimony of the witnesses, Miles, Sloat and Fuller, to the effect.that there had been rumors around Russellville that Ruth Sikes was about to, or was going to bring suit for damages against McGhee for breach of marriage contract, which they had heard before complainant brought this suit, on the ground that same was immaterial and even if true, it constituted no ground upon which an attachment of McGhee's property could be based by complainant, and upon the same ground objected to the testimony of witness Sloat as to the statement of Ruth Sikes made to him in regard to Mr. McGhee's proposed marriage to her, and of her inclination to sue him for damages.

"He also objected to the testimony of witnesses Miles and Fuller as to the time of maturity of demand notes, because in this cause the time of maturity of the demand notes sued upon, was a question for the Court to decide from all of the facts and circumstances shown in proof, and not upon the opinion of witnesses.

"He also objected to the testimony of witness Fuller as to the custom of other banks in handling notes payable on demand, on the ground that the custom of other banks was not controlling but that the matter should be controlled by the custom of complainant

bank in its dealings with defendant McGhee with respect to his notes to it payable on demand. Also to the testimony of witness Miles as to the report of the State Bank Examiners with respect to McGhee's note, on the ground that anything said Examiners may have said, could not constitute grounds for an attachment of Mc-Ghee's property, and said report was therefore irrelevant, and immaterial. He also objected to all testimony developed in his own cross-examination with reference to a conversation had with him by Mr. McMahan, counsel for complainant after this suit had been begun, as irrelevant to any issue in this cause.

"He also objected to all testimony with reference to his engagement, agreements and settlements with Ruth Sikes, on the ground complainant was not prejudiced thereby and evidence of same was irrelevant to any issue in this cause.

"Other objections to testimony were made by defendant at the taking of the testimony and were noted on the depositions.

"All of said objections to testimony were overruled by the Court, and to the action of the Court in overruling his said objections defendant McGhee excepted.

"Upon said appeal being perfected the Clerk and Master will make up and certify the record in said cause to the Clerk of the Court of Appeals at Knoxville, Tennessee, and he will include in his said record so made up and certified all the exhibits to the original bill and all the exhibits to all testimony filed in this cause. He will also include in said record the deposition of J. L. McGhee, Ruth Sikes and A. L. Frierson, appearing in the record in the case of Bedford Can Company v. J. L. McGhee, a companion case now pending in this court, which testimony by agreement was adopted and read as evidence in this case at the hearing. The Clerk will also include in said record so made up and certified all the exhibits appearing in the record in the case of Bedford Can Company v. J. L. McGhee, which as stated above is a companion case now pending in this Court, and which said exhibits by agreement were adopted and read as evidence in this cause at the hearing.

"This decree having failed to reach the record at the proper time is ordered by the Court to be entered nunc pro tunc."

There are twelve assignments of .error, the first of which is that the chancellor erred in sustaining the plea in abatement to the attachment. This assignment we do not think was supported by the proof. On the contrary, we agree with the chancellor that the weight of the proof is against such a contention. This conclusion determines the second assignment adversely to complainant, by which it insisted that the chancellor was in error in referring the matter to the clerk and master to determine the damages that may have accrued by reason of the wrongful suing out of the attachment.

Having determined that the grounds of attachment were not supported, it follows that it was wrongful, thus rendering complainant liable for any damages sustained. The second assignment is therefore overruled.

By the third, fourth, and fifth assignments it is claimed that the chancellor erred in sustaining defendant's plea in abatement to the following notes: One note dated February 17, 1929, in the sum of $150 due ninety days after date and signed by defendant Mc-Ghee and Otto Wall; one note dated April 1, 1929, in the sum of $30, due ninety days after date, payable to defendant J. L. McGhee by defendant Ruth Sikes and indorsed to complainant by defendant McGhee; one note dated April 18, 1929, in the sum of $50, due thirty days after date and signed by defendant McGhee. These assignments are not well taken because the bill was filed on the 18th day of May, 1929, at which time neither of the notes was due. The only thing therefore that could have supported their retention in the bill would have been the sustaining of the attachment sued out to protect their payment when due against any threatened fraudulent disposition of the property of the defendant, which on being sustained would have drawn to the court the jurisdiction to apply such property to the satisfaction of said notes when due. But the attachment going out as wrongful left nothing to fix a status of any present liability thereon when the bill was filed and no peg upon which to hang any secondary jurisdiction to retain and dispose of them otherwise than was done.

The sixth assignment regarding defendant's right to collect for expenses is overruled; because without reference to any right which he may, or may not, have had to collect for voluntary services rendered the bank while a director and without express contract therefor, it was not and could not have been expected that he serve the bank at his own charge, and, if while serving the bank he paid his own necessary and reasonable expenses, it should be regarded as paid for the bank's use and benefit, raising an implied promise to repay. Besides the answer to defendant's cross-bill setting up the account, while denying liability for the services itself avers that he would be entitled to a small allowance for certain expenses which of course means whatever legitimate expenses he reasonably incurred in such service.

Of course, the sustaining of the cross-bill for any purpose overrules the eighth assignment that the court erred in sustaining the cross-bill.

The ninth assignment, which challenges the chancellor's action in taxing complainants with one-fifth of the cost, is not well taken. Defendant defeated some of the relief sought which entitled him to some consideration justifying his defense and cross-action and,

the taxation of the costs being in the sound discretion of the court, it does not appear that he has abused it, and therefore this assignment is overruled.

The seventh assignment is that: "The Court erred in allowing and decreeing a recovery to the defendant J. L. McGhee for the amount of money or usury paid by the Defendant McGhee to the complainant within six years next preceding the filing of the cross bill by said McGhee on loans made by complainant to defendant McGhee, and referring said matter to the Clerk and Master to hear proof and ascertain. The Court should have disallowed the defendant McGhee any amount for usury paid on loans made by the complainant."

In support of the assignment we are referred to the case of Turney v. State Bank, 5 Humph., 407, where it was held as applied to the facts of that case that: "To constitute usury within the prohibition of the law, there must be an intention knowingly to contract for and take usurious interest and if neither party intended it, and act bona fide and innocently, the law will not infer a corrupt agreement, although the funds loaned may not be as valuable in the market as the funds to be paid, or the funds deposited in part consideration of a general agreement."

Under the circumstances of that case, merely because the funds borrowed were lower in value at the time than the money with which they were to be repaid it was held that the circumstances did not show any direct purpose to pay usury on the loans made to Jenkins and when neither party intended it and acted bonafiedly and innocently the law would not infer a corrupt agreement. The court thereupon said:

"Upon this state of the facts, there are two most obvious grounds, upon which the prayer of the plaintiff, for relief, must be refused. These are, first—that there does not appear to be any usury in the case; and, secondly, if there were, the Bank in point of fact, is not indebted to Jenkins upon that or upon any other ground; but on the contrary, Jenkins is largely indebted to the Bank."

Jenkins' indorser filed the bill. This case in no way antagonizes the statute which provides (Shannon's Annotated Code, section 3492 and 3493) that:

"Interest is the compensation which may be demanded by the lender from the borrower. or the creditor from the debtor, for the use of money.

"The amount of said compensation shall be at the rate of six dollars for the use of one hundred dollars for one year; and every excess over that rate is usury."

Also by section 3504 of the same Code it is provided that:

"If usurious interest have been paid, the same may be recovered by action, at the suit of the party from whom it was taken, or his

representative; or it may be subjected by any judgment creditor of such party to the satisfaction of his debt.''

By section 35404a1 of the same Code it is provided that: ''No action shall be brought on any claim for usury after two years from the date of the payment of the debt upon which such claim for usury shall be based.''

In the case of Slover v. Union Bank, 115 Tenn., 347, 89 S. W., 399, 1 L. R. A. (N. S.), 528, the section just quoted, which is of the act of 1903, was held to have only a prospective effect and the act therefore amounts to a statute of limitations against actions for usury since its passage. So that with reference to all closed transactions, if the statute is relied upon and plead as a defense, suit must be brought within two years from the date of payment or discharge. The statute would begin to run from the date of each settlement, and thus it can be known how much usury accrued in each particular obligation so paid and settled. It may turn out that an aggregate of the usury may result from many different obligations. But for notes or obligations carried merely as a series of renewals, it may be with increases, the statute would not begin to run until payment or settlement even though a longer period may have elapsed since payment of usury began. The statute does not undertake to inhibit an earlier action, but simply provides that no action shall be brought after two years from the date of the payment of the debt in which, it may be added, the usury was held as accrued. Independent transactions terminate separately as above indicated and thus afford a means of determining the amount of usury paid in each separate obligation under investigation. However, the statute of limitations is not so important in this case as we do not regard any as pleaded. The nearest approach to such a defense is found in the answer of original complainants to the cross-bill setting up the claim for usury and is as follows:

''Cross-defendant furthermore alleges that if said McGhee were entitled to any credit by reason of being charged more than the lawful rate of interest, to-wit six per cent, that he could only recover such amounts of usurious interests as paid by him during two years next preceding the filing of complainant's bill, according to the laws of the state. Cross-defendant demands strict proof of any and all usurious interest charges.''

This is not in the form of a plea, but as an allegation which is only conditionally and limitedly true as a statement of fact applied to this case and would be altogether untrue unless bolstered with a proper plea of the statute of limitations supported by the proof.

It would seem that the administration of the usury laws partakes of the nature of a public policy. The statute extends to the person from whom it is taken and to certain others which it mentions the

privilege of recovering it by action, and does not make any exception that would estop a debtor who has paid it.

On the contrary, in the case of Buquo v. Bank of Erin (Tenn. Ch. App.), 52 S. W., 775, 778, digested in 12 Michie's, pp. 246, 247, a case very much like the case at bar, it was said:

"We know of no principle of law which would prevent a recovery in a case like this. The mere fact that Buquo was a stockholder, and even a director, in the bank, cannot avoid the effect of the express statutes and penalties upon usury in force in this state, and which entitle a borrower, or his surety, or a judgment creditor to recover. His capacity as a borrower is entirely distinct from that of director and stockholder."

We are therefore of opinion that the defendant McGhee was not estopped to insist upon any investigation as to usury that was paid and, to some extent, under the answer filed to the discovery feature of the cross-bill, admitted to have been paid.

Whatever may be the regulation of the procedure at law concerning the investigation and determination of the consequences of usury it was, we think, not meant thereby to deprive the chancery courts of the jurisdiction they also entertained in such matters, nor to change or hamper their ample and flexible procedure to reach and secure substantial justice. Rather by section 3503 of Shannon's Annotated Code it was intended to preserve it. It has been held that a note bearing a usurious rate of interest upon its face and for such reason void and unenforceable, yet upon an application substantially of the maker of a note to have it so declared it was declined by such court except upon condition that payment of the principal with the legal interest that had accrued be made. Peter Sporrer v. Nicholas Eifler et al., 1 Heisk., 633.

The court in this last-mentioned case, referring to Story's Equity Jurisprudence for statement of the rule, makes manifest in its approval the reasons therefor and the distinctions in its ministry. We quote:

"The complainants, for one ground, resist the right of Mrs. Eifler, because a statute makes void, contracts carrying more than six per cent. In discussing this question, Judge Story, in his work on Eq. Jur., section 301, says:

" 'In cases of usury, this distinction has been adopted by courts of equity. All such contracts being declared void by the statute against usury, courts of equity will follow the law in the construction of the statute. If, therefore, the usurer or lender come into a court of equity, seeking to enforce the contract, the Court will refuse any assistance, and repudiate the contract. But, on the other hand, if the borrower comes into a court of equity, seeking relief against the usurious contract, the only terms upon which the Court will interfere are, that the plaintiff will pay the defendant what is really and bona fide due to him, deducting the usurious interest; and if the

plaintiff does not make such offer in his bill, the defendant may demur to it, and the bill will be dismissed.'

"The ground of this distinction is (says the author) 'that a Court of Equity is not positively bound to interfere in such cases by an active exertion of its powers, but has a discretion on the subject, and may prescribe the terms of its interference; and he who seeks equity at its hands may well be required to do equity; and it is against conscience that the party should have full relief, and at the same time pocket the money loaned, which may have been granted at his own mere solicitation, for then a statute made to prevent fraud and oppression, would be made the instrument of fraud. But in the other case, if equity should relieve the lender who is plaintiff, it would be adding a wrongdoer, who is seeking to make the Court the means of carrying into effect a transaction manifestly wrong and illegal in itself.'"

Usury does not appear on the face of the original bill. It was therefore subject to the rule in such cases that usury appearing in the proof was money had to the use of the borrower and subject to be applied to the satisfaction of the debt sued on. See note 23 under said section 3503 of Shannon's Annotated Code and the cases there cited, which in the note are digested as holding that: "The rule in equity in granting relief against usury is to apply the excess of legal interest to the satisfaction of the principal, and when that is paid in this way, all that is paid afterwards may be recovered by the borrower, as so much money had and received by the lender to the borrower's use; and until the principal is paid, and something in excess as usury, the statutes of limitations do not commence to run against an action for the recovery of the usury (and would then run only from each several payment)."

It is quite evident from the size of the recovery that nothing in the shape of usury would have been under the foregoing rule by the cross-bill, but that forms no reason why the amount of usury paid might not have been applied to the reduction of the recovery complainant sought and obtained even had there been a demurrer filed to this feature of the cross-bill, and had it been to this extent sustained. But no such demurrer was filed and no reason therefore would appear for its dismissal. Besides, it contained other features of claims, among which it asked for a discovery as to amount of usury, laying grounds therefor. So that while he rendered judgment in the first instance against the defendant McGhee for the notes and interest retained in the bill, he yet stayed execution thereon until the incoming report for the purpose of setting off against the judgments whatever the report might show the said McGhee entitled.

We think the pleadings amply authorized this disposition, which meets the merits of the case. We find no reversible error in the decree of the chancellor; all assignments are therefore overruled, and

it is affirmed, with costs of this court adjudged against appellant and its security. Other cost and costs to accrue in the reference ordered will remain as adjudged and to be adjudged by the chancellor, and the case remanded to carry out the reference.

Portrum and Thompson, JJ., concur.